UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION

| | |
|---|---|
| RICARDO DEVENGOECHEA, | ) Case No.: |
| | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) |
| BOLIVARIAN REPUBLIC OF | ) |
| VENEZUELA, a foreign state, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**COMPLAINT FOR DECLARATORY RELIEF; IMPOSITION OF A CONSTRUCTIVE
TRUST; POSSESSION OF PERSONAL PROPERTY; AND CONVERSION**

SUMMARY

This action seeks to recover a collection of antiquities, artifacts, historical documents, and a DNA sample (e.g. hair locket) of General Simon Bolivar. These items were taken from their rightful owner by the government of the Bolivarian Republic of Venezuela.

General Bolivar (1783-1830) was the greatest military and political leader in the history of South America. He played an immense role in the liberation and independence of four South American countries. He led Colombia, Venezuela, Panama, Ecuador, and Peru to revolutionary victories over the Spanish Monarchy and was at various times the President of each country. General Bolivar is widely known as the George Washington of South America. During the height of his political and military prowess, Bolivar traveled across the world and lived for a time in Napoleonic France.

Ricardo Devengoechea's ancestors, a founding family of Colombia, came to lawfully possess important artifacts belonging and pertaining to General Bolivar. In fact, the artifacts in dispute were gifted by General Bolivar to Ricardo Devengoechea's great, great, grandfather, Joaquin de Mier. The Ricardo Devengoechea family, now living in the United States, have been in possession of these valuable historical items (hereinafter the "Devengoechea Collection") for generations until they were recently taken by the Venezuelan government under the guise of a cooperative investigation with Ricardo Devengoechea into Venezuela's history, and the

questionable circumstances surrounding the death of General Simon Bolivar and the location of Bolivar's burial site.

The Plaintiff RICARDO DEVENGOECHEA (hereinafter "DEVENGOECHEA"), by and through the undersigned counsel, complaining of the Defendant, the BOLIVARIAN REPUBLIC OF VENEZUELA (hereinafter "VENEZUELA") therefore brings this action and alleges as follows:

## PARTIES

1.      At all times material hereto, DEVENGOECHEA was a resident of the State of Florida and is *sui juris*.

2.      At all times material hereto, VENEZUELA is a foreign state as defined in 28 U.S.C. § 1603(a).

## JURISDICTIONAL ALLEGATIONS

3.      This Court has subject matter jurisdiction and personal jurisdiction over VENEZUELA under 28 U.S.C. § 1330(a) because the defendant is a foreign state within the meaning of 28 U.S.C. § 1603(a) and this is a non-jury civil action as to which VENEZUELA is not entitled to sovereign immunity under 28 USC §§ 1605-1607 or any applicable international agreement. See Republic of Austria v. Altmann, 317 F.3d 954, modified 327 F.3d 1246 (9th Cir. 2003), aff'd 541 U.S. 677 (2004).

4.      This is an action seeking damages and declaratory relief for the expropriation of Plaintiff's personal property in violation of international law pursuant to the "expropriation" exception to VENEZUELA'S sovereign immunity, enumerated in 28 USC 1605(a)(3), the Foreign Sovereign Immunity Act ("FSIA"). The expropriated property includes, but is not limited to, antiquities relating to General Simon Bolivar. The antiquities were taken by VENEZUELA and as of yet have not been returned despite repeated requests by DEVENGOECHEA. VENEZUELA has provided no explanation for its failure and/or refusal to return the Devengoechea Collection to DEVENGOECHEA.

5.      Alternatively, this is an action seeking declaratory relief, the imposition of a constructive trust and, if necessary, for the conversion of personal property pursuant to the "commercial activity" exception to VENEZUELA'S sovereign immunity enumerated in 28 USC § 1605(a)(2) of the FSIA.

2

6.      The antiquities at issue are now in the possession of VENEZUELA.

7.      Possession of the antiquities was obtained by VENEZUELA without the payment of prompt and adequate compensation of any kind.

8.      VENEZUELA is engaged in commercial activity in the United States, and in this judicial District in particular as follows:

         a.      VENEZUELA actively promotes its cultural and commercial interests throughout the United States, including Florida. VENEZUELA had a consular office in Miami, Florida until it recently closed in January, 2012.

         b.      Furthermore, VENEZUELA conducted commercial activity in the United States in the present case by taking the Devengoechea Collection with the specific intent of displaying the antiquities in museums and elsewhere, including the *Museo Bolivariano* in Caracas, Venezuela. The nature and purpose of this particular activity in the United States was to procure the Devengoechea Collection for commercial gain.

9.      Venue is proper in this District under 28 USC §1391(f)(3) because VENEZUELA conducts business in this district. There is no other venue in the United States that would be more appropriate for this action that this District.

<u>GENERAL ALLEGATIONS</u>

10.     DEVENGOECHEA was in possession of a collection of antiquities and artifacts of former Liberator and General of VENEZUELA, Simon Bolivar.

11.     The Devengoechea family, a founding family of Colombia, owns and was in possession of the Devengoechea Collection which was comprised of General Bolivar's Liberation Medal awarded to him by the nation of Peru, the epaulets from the military uniform of Emperor Napoleon Bonaparte of France, and a treasure trove of historical documents and letters, many of which were written and/or signed by General Bolivar himself.

12.     Perhaps most unique to the Devengoechea Collection was hair samples of General Bolivar which provided VENEZUELA with authenticated DNA samples.

13.     With these hair samples, Venezuelan President Hugo Chavez intended to scientifically verify the remains of General Bolivar to ensure their "rightful" place within VENEZUELA'S borders.

3

14.     In fact, with the DNA samples provided by DEVENGOECHEA, President Chavez subsequently exhumed General Bolivar's alleged body with the intent of proving the authenticity of the remains that are in VENEZUELA'S possession which it claims to be those of General Bolivar.  The exhumation was televised live on VENEZUELA'S state-owned television stations including *Venezolana de Television*, which then disseminated the footage worldwide, including in the United States.   VENEZUELA used DEVENGOECHEA'S artifacts and antiquities for its own commercial gain, particularly in the United States through coverage of this event by VENEZUELA itself.  This activity constituted commercial activity within the United States as it boosted VENEZUELA'S worldwide appeal to foreign travelers and tourists, including those in the United States.

15.     In October of 2007, VENEZUELAN government officials contacted DEVENGOECHEA, having learned that DEVENGOECHEA family was in possession of various Bolivar items of extreme historical significance to VENEZUELA.

16.     VENEZUELA invited DEVENGOECHEA to visit VENEZUELA and to bring the Devengoechea Collection for review and testing by various experts retained by VENEZUELA.

17.     On October 17, 2007, VENEZUELA sent a private jet to Florida to pick up DEVENGOECHEA and take him and the Devengoechea Collection to VENEZUELA as an invited guest of the Venezuelan government.  VENEZUELA sent various government officials including Delcey Rodriguez, the *Coordinadora General de la Vicepresidencia* (Coordinator General of the Vice presidency) and sister of VENEZUELA'S then Vice President, Jorge Rodriguez, to escort DEVENGOECHEA and the Devengoechea Collection to VENEZUELA.

18.     DEVENGOECHEA spent approximately one month as the guest of VENEZUELA and was invited to participate with VENEZUELA'S official investigative team that reviewed and inspected the Devengoechea Collection and traveled with DEVENGOECHEA to his ancestral home across the current border in Colombia for further investigation.

19.     During the visit to VENEZUELA, DEVENGOECHEA realized that he had more documentation and artifacts at his home in Florida.  VENEZULEA, at its expense, returned DEVENGOECHEA back to the United States on a commercial flight to immediately retrieve the additional items and return to VENEZUELA.

4

20.    At the conclusion of his one month stay (notwithstanding the interim trip to and from the United States to retrieve additional antiquities), DEVENGOECHEA returned to the United States.    At the request of VENEZUELA, DEVENGOECHEA entrusted the Devengoechea Collection to the VENEZUELAN government with the express understanding that VENEZUELA would immediately return the entire Devengoechea Collection upon completion of its investigation or upon DEVENGOECHEA'S request.

21.    VENEZUELA returned DEVENGOECHEA to Florida by private jet provided by the VENEZUELAN Government on November 6, 2007.

22.    On July 25, 2011, DEVENGOECHEA learned, through various news reports, that VENEZUELA had completed its investigation surrounding Bolivar's death and burial, which was the subject of the investigation using the contents of the Devengoechea Collection.

23.    On October 26, 2011, DEVENGOECHEA, through legal counsel, made written requests for the return of the Collection. On November 28, 2011, legal counsel subsequently met with VENEZUELAN officials, specifically with then VENEZUELA Consul General, the Honorable Livia Antonieta Acosta Noguera, at VENEZUELA'S consular office in Miami, Florida to make arrangements for return of the Devengoechea Collection or to complete negotiations for the sale of the Devengoechea Collection.

24.    Subsequently, the VENEZUELAN consular office in Miami, Florida was closed.

25.    DEVENGOECHEA, through his attorneys, has repeated this written request to the VENEZUELAN embassy in Washington D.C. both in writing and via several telephone calls, for the return of the Devengoechea Collection. Those requests have been summarily ignored as well.

26.    Despite his numerous attempts to secure the return of the Devengoechea Collection, VENEZUELA has continuously failed or refused to return the Devengoechea Collection to DEVENGOECHEA.

27.    VENEZUELA'S refusal to return the Devengoechea Collection is a clear act of expropriation of DEVENGOECHEA'S personal property in violation of international law.

28.    During his visit, VENEZUELAN government officials advised DEVENGOECHEA of VENEZUELA'S desire and plans to display the rare and valuable antiquities of the Devengoechea Collection in museums and elsewhere in VENEZUELA, where entrance fees were charged to visitors to view the Devengoechea Collection.

29.     VENEZUELAN government officials made inquiries and solicited offers for DEVENGOECHEA to sell the Devengoechea Collection to VENEZUELA.  Although no formal contract was ever reached between the parties, the offers and negotiations provide further evidence of commercial activity.

30.     On information and belief, VENEZUELA plans to market the Devengoechea Collection in print and on the World Wide Web, and display the prized collection in museums for commercial gain.

31.     Advertisements for viewing the Devengoechea Collection in museums will be available in the United States, customers will be directly solicited in the United States, and Americans will be among those targeted to view the artifacts and antiquities of the Devengoechea Collection.

32.     Furthermore, VENEZUELA carried on commercial activity in the United States by sending a private jet the United States to procure DEVENGOECHEA and the Devengoechea Collection for VENEZUELA'S commercial gain and with the expressed intent to purchase the Devengoechea Collection.

33.     These acts each constitute commercial activity carried on in the United States by a foreign state as well as acts performed in the United States in connection with commercial activity in a foreign state.

34.     The display of the artifacts and antiquities of the Devengoechea Collection in a museum is akin to the type of commercial activity in which a private person could engage.

<u>COUNT I: DECLARATORY RELIEF</u>

35.     DEVENGOECHEA incorporates here by reference paragraphs 1 through 34.

36.     An actual controversy exists between DEVENGOECHEA and VENEZUELA, as to ownership of the Devengoechea Collection and DEVENGOECHEA'S right to return of the Devengoechea Collection.

37.     Pursuant to 28 USC § 2201, DEVENGOECHEA prays for a declaration affirming DEVENGOECHEA'S ownership of the Devengoechea Collection and his right to its immediate return.

<u>COUNT II: IMPOSITION OF A CONSTRUCTIVE TRUST</u>

38.     DEVENGOECHEA incorporates here by reference paragraphs 1 through 37.

39.     VENEZUELA has wrongfully detained the Devengoechea Collection for its own use.

40.     Under the guise of this cooperative investigative project to further discover the history of Simon Bolivar himself and VENEZUELA as a nation through a study of the Devengoechea Collection, VENEZUELA took what was supposed to be temporary possession of DEVENGOECHEA'S personal property.

41.     DEVENGOECHEA returned to the United States after one month and was promised that the Devengoechea Collection would be returned to him in the United States once VENEZUELA completed its investigation into the death and burial of General Bolivar.

42.     VENEZUELA completed its investigation in July, 2011, but despite repeated requests, has not returned the Devengoechea Collection to DEVENGOECHEA.

43.     As a result, DEVENGOECHEA is entitled to the imposition of a constructive trust obligating VENEZUELA to return the Devengoechea Collection to DEVENGOECHEA.

<u>COUNT III: ACTION FOR POSSESSION OF PERSONAL PROPERTY</u>

44.     DEVENGOECHEA incorporates here by reference paragraphs 1-43.

45.     DEVENGOECHEA is the lawful owner of the Devengoechea Collection.

46.     DEVENGOECHEA is entitled to immediate recovery of the Devengoechea Collection.

47.     DEVENGOECHEA is also entitled to recover damages for deprivation of possession of the Devengoechea Collection from the time of the demand for return of the Devengoechea Collection until he recovers possession of it, and VENEZUELA'S unjust enrichment resulting from use of the Devengoechea Collection during the same period of time.

<u>COUNT IV: CONVERSION</u>

48.     DEVENGOECHEA incorporates here by reference paragraphs 1-47.

49.     VENEZUELA has wrongfully asserted its dominion and control over the Devengoechea Collection, including but not limited to:

    a.     Historic documents including, but not limited, letters and other writings and correspondence to and from General Bolivar.

7

      b.      Ornamental epaulets of General Napoleon Bonaparte of France;

      c.      General Bolivar's one-of-a-kind Liberation Medal of Peru;

      d.      General Bolivar's DNA Sample (e.g. hair locket);

50.      DEVENGOECHEA has, to no avail, requested that VENEZUELA return the property to him.

51.      VENEZUELA has not met DEVENGOECHEA'S repeated requests.

**WHEREFORE**, the Plaintiff, DEVENGOECHEA, prays for relief as follows:

1.      For a declaration affirming DEVENGOECHEA'S ownership of the Devengoechea Collection and his right to its immediate return.

2.      For imposition of a constructive trust on the Devengoechea Collection.

3.      For an order directing VENEZUELA to return the Devengoechea Collection to DEVENGOECHEA.

4.      In the alternative, if VENEZUELA does not return the Devengoechea Collection, for an award of damages in an amount to be proven at trial.

5.      For further compensatory damages for the refusal of VENEZUELA to return the Devengoechea Collection together with an award in the amount of the defendant's unjust enrichment resulting from their use of the Devengoechea Collection from the time of his demand for the Devengoechea Collection's return until DEVENGOECHEA recovers possession for it.

6.      For exemplary damages to the extent allowed by law.

7.      For pre and post-judgment interest on any award.

8.      For costs, including a reasonable attorneys' fee, to the extent allowed by law.

9.      For such other and further relief that the Court deems just and appropriate.

Dated this 15th day of October, 2012.

      LAW OFFICES OF MAX R. PRICE, P.A.
      6701 Sunset Drive, Suite104
      Miami, Florida 33143
      Tel.: (305) 662-2272
      Fax: (305) 667-3975
      mprice@pricelegal.com

      BY: _____/s/_____
          MAX R. PRICE, ESQ.
          FL. BAR #651494

# SACCANI LEGAL AND BUSINESS TRANSLATIONS

36 Sam Perl Boulevard, #150
Brownsville, Texas  78520

TELEPHONE: (956) 465-8282
FAX: (800) 910-8470
www.slbt.net

STATE OF FLORIDA                          )
                                          )
COUNTY OF MIAMI-DADE            )

I, the undersigned, Zel Saccani, being duly sworn, hereby declare and state that I am fluent in the English and Spanish languages and have rendered a complete and accurate Spanish translation of the attached English-language documents in the matter styled "Ricardo Devengoechea vs. Bolivarian Republic of Venezuela".

Yo, el suscrito, Zel Saccani, declaro bajo juramento que domino los idiomas español e inglés y que he rendido una traducción fiel y auténtica al español de los documentos adjuntos en inglés en el caso caratulado "Ricardo Devengoechea contra la República Bolivariana de Venezuela".

By: _____
        Zel Saccani
        President

Sworn to and subscribed before me this 12Th day of Sept., 2012.

_____
Notary's Signature

Notary Public State of Florida
Jennifer Swink
My Commission EE011090
Expires 08/27/2014

☐   Personally known to me.

☒   Produced identification.

If so, type of identification produced: Texas D.L. _____

TRIBUNAL DE PRIMERA INSTANCIA
DE LOS ESTADOS UNIDOS
PARA EL DISTRITO SUR DE LA FLORIDA
DIVISIÓN DE MIAMI-DADE

| | |
|---|---|
| RICARDO DEVENGOECHEA )<br><br>*Parte Demandante* )<br><br>contra la )<br><br>REPÚBLICA BOLIVARIANA )<br>DE VENEZUELA )<br><br>*Parte Demandada* ) | Acción Civil No. |

## DEMANDA CON PETICIÓN DE REPARACIÓN JUDICIAL DECLARATORIA; IMPOSICIÓN JUDICIAL DE FIDEICOMISO; RECUPERACIÓN DE BIENES PERSONALES; Y DECLARACIÓN DE APROPIACIÓN INDEBIDA DE BIENES AJENOS

RESUMEN

A través de esta acción se pretender recuperar una colección de antigüedades, artículos, documentos históricos y una muestra de ADN (por ejemplo, el guardapelo) del General Simón Bolívar. El gobierno de la República Bolivariana de Venezuela se apoderó de estos artículos de su legítimo dueño.

El General Bolívar (1783-1830) fue el mejor líder militar y político de la historia de Suramérica. Desempeñó un papel importante en la liberación e independencia de cuatro países suramericanos. Llevó a Colombia, Venezuela, Panamá, Ecuador y Perú a victorias revolucionarias sobre la Monarquía Española y fue presidente durante varios momentos de la historia de cada uno de esos países. El General Bolívar se conoce popularmente como el *George Washington* de Suramérica. Durante el auge de su poder militar y político, Bolívar viajó por el mundo y vivió un tiempo en Francia durante la época de Napoleón.

Como una de las familias fundadoras de Colombia, los antepasados de Ricardo Devengoechea llegaron a ser dueños de varios artículos importantes del General Bolívar. De hecho, los artículos en disputa fueron regalados por el General Bolívar a Joaquín de Mier, tatarabuelo de Ricardo Devengoechea. La familia de Ricardo Devengoechea, que ahora vive en los Estados Unidos, mantuvo en su poder los artículos históricos (de aquí en adelante, la

"Colección de Devengoechea") durante generaciones hasta que recientemente el gobierno venezolano se apoderó de ellos con el pretexto de realizar una investigación cooperativa junto a Ricardo Devengoechea acerca de la historia de Venezuela y las circunstancias poco claras de la muerte del General Simón Bolívar y el lugar de entierro del mismo.

La parte demandante, RICARDO DEVENGOECHEA (de aquí en adelante, "DEVENGOECHEA"), a través de su abogado suscrito, presenta esta demanda contra la parte demandada, la REPÚBLICA BOLIVARIANA DE VENEZUELA (de aquí en adelante, "VENEZUELA"), en base a lo siguiente:

PARTES

1.      En todo momento relevante, DEVENGOECHEA fue residente del Estado de la Florida y es *sui iuris*.

2.      En todo momento relevante, VENEZUELA es un estado extranjero, según lo definido en 28 U.S.C. § 1603(a).

ALEGACIONES DE COMPETENCIA JURISDICCIONAL

3.      Este Tribunal ejerce competencia jurisdiccional sobre la materia y sobre la persona de VENEZUELA conforme a 28 U.S.C. § 1330(a) porque la parte demandada es un estado extranjero según lo definido en 28 U.S.C. § 1603(a) y esta es una acción civil sin jurado. Por eso, VENEZUELA no tiene derecho a la inmunidad soberana, en virtud de 28 USC §§ 1605-1607 o un acuerdo internacional aplicable. Ver Republic of Austria v. Altmann, 317 F.3d 954, modificado (*modified*) 327 F.3d 1246 (9th Cir. 2003), ratificado (*aff'd*) 541 U.S. 677 (2004).

4.      A través de esta acción se solicita la indemnización por daños y reparación judicial declaratoria en base a la expropiación de bienes personales de la Parte Demandante en violación del derecho internacional conforme a la excepción por "expropiación" de la inmunidad soberana de VENEZUELA, según lo establecido en 28 USC 1605(a)(3), la "Ley de Inmunidad Soberana Extranjera" (en inglés, *Foreign Sovereign Immunity Act*, conocida por sus siglas en inglés como "FSIA").  La propiedad expropiada incluye, sin limitación, las antigüedades relacionadas con el General Simón Bolívar, de las cuales VENEZUELA se apoderó sin devolverlas hasta ahora, a pesar de repetidas solicitudes por parte de DEVENGOECHEA. VENEZUELA no ha dado explicaciones con respecto a la falta y/o negativa a devolver la Colección de Devengoechea a DEVENGOECHEA.

2

5.      Alternativamente se solicita la reparación judicial declaratoria, imposición judicial de un fideicomiso y, si fuera necesario, una determinación judicial de que VENEZUELA se apropió ilegalmente de bienes personales ajenos, conforme a la excepción por "actividades comerciales" a la inmunidad soberana de Venezuela, según lo definido en 28 USC § 1605(a)(2) de la FSIA.

6.      VENEZUELA actualmente tiene en su poder las antigüedades en cuestión.

7.      VENEZUELA obtuvo las antigüedades sin pagar ningún tipo de indemnización en forma oportuna y adecuada.

8.      VENEZUELA realiza actividades comerciales en los Estados Unidos, y específicamente en este Distrito judicial, de la siguiente manera:

      a.      VENEZUELA promueve activamente sus intereses culturales y comerciales a través de los Estados Unidos, incluida la Florida. VENEZUELA tenía oficina consular en Miami, Florida, hasta que se cerró recientemente en enero de 2012.

      b.      Además, VENEZUELA realizó actividades comerciales en los Estados Unidos en el presente caso al apoderarse de la Colección de Devengoechea, con la intención específica de exhibir las antigüedades en museos y otras partes, incluido el Museo Bolivariano en Caracas, Venezuela.  La naturaleza y el propósito de esta actividad en particular en los Estados Unidos era apoderarse de la Colección de Devengoechea para fines comerciales.

9.      Este Distrito tiene jurisdicción territorial (más que cualquier otro lugar en los Estados Unidos) conforme a 28 USC §1391(f)(3) porque VENEZUELA hace negocios en el mismo.

<u>ALEGACIONES GENERALES</u>

10.     DEVENGOECHEA tenía en su poder una colección de antigüedades y artículos del antiguo Liberador y General de VENEZUELA, Simón Bolívar.

11.     Como una de las fundadoras de Colombia, la familia Devengoechea es dueña de y tenía en su poder la Colección de Devengoechea, que consistía en la Medalla de Liberación del General Bolívar otorgada por la nación del Perú, las hombreras del uniforme militar del

3

Emperador Napoleón Bonaparte de Francia y una botija de documentos y cartas históricos, incluidos algunos que fueron escritos y/o firmados por el mismo General Bolívar.

12.     Probablemente lo más único de la Colección de Devengoechea eran las muestras de pelo del General Bolívar, que facilitaron a VENEZUELA muestras autenticadas de ADN.

13.     Con estas muestras de pelo, el presidente venezolano Hugo Chávez intentó verificar científicamente los restos del General Bolívar a fin de asegurar su lugar "correcto" dentro del territorio de VENEZUELA.

14.     De hecho, a través de las muestras de ADN proporcionadas por DEVENGOECHEA, el Presidente Chávez posteriormente exhumó el presunto cadáver del General Bolívar con la intención de comprobar la autenticidad de los restos que están en el poder de VENEZUELA y que esta alega que son del General Bolívar. La exhumación se transmitió en vivo en los canales estatales de televisión de VENEZUELA, incluida Venezolana de Televisión, y después a nivel mundial, incluido en los Estados Unidos. VENEZUELA utilizó los artículos y antigüedades de DEVENGOECHEA para su propio beneficio comercial, particularmente en los Estados Unidos mediante la cobertura de este evento por VENEZUELA. Esta actividad constituyó actividad comercial dentro de los Estados Unidos, ya que provocó mayor interés entre los viajeros y turistas extranjeros (incluidos de los Estados Unidos) por visitar VENEZUELA.

15.     En octubre de 2007, funcionarios del gobierno de VENEZUELA se pusieron en contacto con DEVENGOECHEA, tras enterarse de que la familia DEVENGOECHEA tenía en su poder varios artículos históricos de Bolívar que eran importantes para VENEZUELA.

16.     VENEZUELA invitó a DEVENGOECHEA a visitar el país y llevar la Colección de Devengoechea para revisión y examen por varios expertos contratados por VENEZUELA.

17.     El 17 de octubre de 2007, VENEZUELA envió un avión privado a la Florida para traer a DEVENGOECHEA (junto con la Colección de Devengoechea) a VENEZUELA como invitado del gobierno de VENEZUELA. VENEZUELA envió a varios oficiales del gobierno, incluida Delcey Rodriguez, Coordinadora General de la Vicepresidencia y hermana del antiguo vicepresidente de VENEZUELA, Jorge Rodríguez, para acompañar a DEVENGOECHEA y la Colección de Devengoechea a VENEZUELA.

18.     DEVENGOECHEA pasó aproximadamente un mes como invitado de VENEZUELA y fue invitado a participar junto con el equipo de investigación oficial de

4

VENEZUELA, el cual revisó e inspeccionó la Colección de Devengoechea y viajó con DEVENGOECHEA a su casa ancestral, cruzando la frontera actual de Colombia para realizar más investigaciones.

19.     Durante la visita a VENEZUELA, DEVENGOECHEA se dio cuenta de que tenía más documentos y artículos en su casa en la Florida. A costo de VENEZUELA, DEVENGOECHEA regresó a los Estados Unidos para recoger los artículos adicionales y volver a VENEZUELA

20.     Al final de su estancia de un mes (aparte del viaje adicional a los Estados Unidos para recoger antigüedades adicionales y llevarlas a VENEZUELA), DEVENGOECHEA regresó a los Estados Unidos. A petición de VENEZUELA, DEVENGOECHEA prestó la Colección de Devengoechea al gobierno de VENEZUELA, con el entendimiento expreso de que VENEZUELA devolvería en forma inmediata toda la Colección de Devengoechea, una vez completada la investigación o a petición de DEVENGOECHEA.

21.     VENEZUELA regresó a DEVENGOECHEA a la Florida en un avión privado puesto a disposición por el gobierno de VENEZUELA el día 6 de noviembre de 2007.

22.     El 25 de julio de 2011, DEVENGOECHEA supo, a través de varios noticieros, que VENEZUELA había completado su investigación con respecto a la muerte y el entierro de Bolívar, que fue tema de investigación en base al contenido de la Colección de Devengoechea.

23.     El 26 de octubre de 2011, DEVENGOECHEA, a través de sus abogados, pidió por escrito la devolución de la Colección. El 28 de noviembre de 2011, sus abogados se reunieron con oficiales de VENEZUELA, específicamente, con la antigua Cónsul General de VENEZUELA, la Honorable Livia Antonieta Acosta Noguera, en la oficina consular de VENEZUELA en Miami, Florida, a fin de hacer los arreglos para devolver la Colección de Devengoechea o llevar a cabo las negociaciones para venderla.

24.     Posteriormente, se cerró la oficina consular de VENEZUELA en Miami, Florida.

25.     DEVENGOECHEA, a través de sus abogados, ha presentado esta solicitud repetidas veces por escrito a la Embajada de VENEZUELA en Washington, D.C. tanto por escrito como a través de varias llamadas telefónicas, pidiendo la devolución de la Colección de Devengoechea. Se ha hecho caso omiso de estas peticiones también.

26.     A pesar de sus numerosos intentos por lograr la devolución de la Colección de Devengoechea, VENEZUELA se ha negado o ha rechazado devolver la Colección de Devengoechea a DEVENGOECHEA.

27.     La negativa de VENEZUELA a devolver la Colección de Devengoechea es un acto claro de expropiación de los bienes personales de DEVENGOECHEA, en violación del derecho internacional.

28.     Durante su visita, los oficiales del gobierno de VENEZUELA avisaron a DEVENGOECHEA del deseo e intención de VENEZUELA de exhibir las antigüedades únicas y valiosas de la Colección de Devengoechea en museos y otras partes de VENEZUELA, donde se cobra entrada por verlas.

29.     Los oficiales del gobierno de VENEZUELA pidieron información y solicitaron ofertas para que DEVENGOECHEA vendiera la Colección de Devengoechea a VENEZUELA. Si bien no se celebró ningún contrato formal entre las partes, las ofertas y negociaciones dan más pruebas de actividades comerciales.

30.     A nuestro leal saber y entender, VENEZUELA piensa comercializar la Colección de Devengoechea en forma impresa y por Internet y exhibirla en museos para su beneficio comercial.

31.     Los anuncios para ver la Colección de Devengoechea en museos estarán disponibles en los Estados Unidos. Además, se buscarán clientes en los Estados Unidos, donde se hará publicidad acerca de los artículos y antigüedades de la Colección de Devengoechea.

32.     Asimismo, VENEZUELA llevó a cabo actividades comerciales en los Estados Unidos al enviar un avión privado a los Estados Unidos para buscar a DEVENGOECHEA y la Colección de Devengoechea para beneficio comercial de VENEZUELA y con la intención expresa de comprar la Colección de Devengoechea.

33.     Estos actos constituyen actividades comerciales realizadas en los Estados Unidos por un estado extranjero, así como actos en los Estados Unidos en relación con actividades comerciales en un país extranjero.

34.     La exhibición de artículos y antigüedades de la Colección de Devengoechea en un museo es similar al tipo de actividad comercial que una persona natural podría realizar.

6

PETICIÓN I: REPARACIÓN JUDICIAL DECLARATORIA

35.    DEVENGOECHEA incluye por referencia los párrafos 1 a 34.

36.    Una controversia real existe entre DEVENGOECHEA y VENEZUELA, en relación con la propiedad y dominio de la Colección de Devengoechea y el derecho de DEVENGOECHEA a la devolución de la misma.

37.    En virtud de 28 USC § 2201, DEVENGOECHEA solicita una declaración que afirme que DEVENGOECHEA es dueño de la Colección de Devengoechea y tiene derecho a su devolución inmediata.

PETICIÓN II: IMPOSICIÓN JUDICIAL DE UN FIDEICOMISO

38.    DEVENGOECHEA incluye por referencia los párrafos 1 a 37.

39.    VENEZUELA ha retenido ilícitamente la Colección de Devengoechea para su propio uso.

40.    Con el pretexto de realizar un proyecto de investigación conjunto a fin de descubrir la historia de Simón Bolívar y VENEZUELA como país mediante un examen de la Colección de Devengoechea, VENEZUELA obtuvo lo que debía ser la posesión temporal de los bienes personales de DEVENGOECHEA.

41.    DEVENGOECHEA regresó a los Estados Unidos después de un mes y recibió la promesa de que se le devolvería la Colección de Devengoechea una vez completada la investigación por VENEZUELA acerca del fallecimiento y entierro del General Bolívar.

42.    A pesar de haber terminado su investigación en julio de 2011, y después de repetidas peticiones, VENEZUELA no ha devuelto la Colección de Devengoechea a DEVENGOECHEA.

43.    Como resultado, DEVENGOECHEA tiene derecho de la imposición judicial de un fideicomiso sobre la Colección de Devengoechea para obligar que VENEZUELA devuelva la Colección de Devengoechea a DEVENGOECHEA.

PETICIÓN III: SOLICITUD DE RECUPERAR BIENES PERSONALES

44.    DEVENGOECHEA incluye por referencia los párrafos 1 a 43.

45.    DEVENGOECHEA es legítimo dueño de la Colección de Devengoechea.

46.    DEVENGOECHEA tiene derecho de recuperar inmediatamente la Colección de Devengoechea.

7

47.     DEVENGOECHEA también tiene derecho de recuperar daños por habérsele privado de posesión de la Colección de Devengoechea desde el momento en que exigió su devolución hasta que él recupere la posesión de la misma, así como por enriquecimiento ilícito por parte de VENEZUELA en base al uso de la Colección de Devengoechea durante el mismo periodo de tiempo.

PETICIÓN IV: DECLARACIÓN DE APROPIACIÓN INDEBIDA DE BIENES AJENOS

48.     DEVENGOECHEA incluye por referencia los párrafos 1 a 47.

49.     VENEZUELA ha ejercido un dominio y control ilícito sobre la Colección de Devengoechea, incluido, sin limitación:

        a.     Documentos históricos, incluidos, sin limitación, cartas y otros escritos y correspondencia del General Bolívar;

        b.     Hombreras ornamentales del General Napoleón Bonaparte de Francia;

        c.     Medalla de Liberación (estilo único) otorgada por el Perú al General Bolívar; y

        d.     Muestra de ADN del General Bolívar (por ejemplo, el guardapelo).

50.     Sin éxito, DEVENGOECHEA ha solicitado que VENEZUELA le devuelva la propiedad.

51.     VENEZUELA no ha accedido a las repetidas peticiones de DEVENGOECHEA.

**POR LO TANTO**, la Parte Demandante, DEVENGOECHEA, solicita las siguientes formas de reparación judicial:

1.     Una declaración que afirme la propiedad y dominio de DEVENGOECHEA sobre la Colección de Devengoechea y su derecho a la devolución inmediata de la misma;

2.     Imposición judicial de un fideicomiso sobre la Colección de Devengoechea;

3.     Una orden que dirija a VENEZUELA a devolver la Colección de Devengoechea a DEVENGOECHEA;

4.     Alternativamente, si VENEZUELA no devuelve la Colección Devengoechea, una sentencia por daños por el monto a ser comprobado durante un juicio;

5.     Otros daños compensatorios por la negativa de VENEZUELA a devolver la Colección de Devengoechea, junto con una sentencia por el monto del enriquecimiento ilícito que resulte de su uso de la Colección de Devengoechea desde el momento en que se le exigió devolver

8

la Colección de Devengoechea hasta que DEVENGOECHEA recupere posesión de la misma;

    6.     Por daños punitivos, en la medida permitida por la ley;

    7.     Por intereses judiciales, antes y después de pronunciada cualquier sentencia;

    8.     Por costos, incluidos honorarios de abogado razonables, en la medida permitida por la ley;

    9.     Por cualquier otra forma de reparación judicial que este Tribunal estime justa y apropiada.

Fecha: 15ᵗʰ de octubre de 2012.

LAW OFFICES OF MAX R. PRICE, P.A.
6701 Sunset Drive, Suite 104
Miami, Florida 33143
Tel.: (305) 662-2272
Fax: (305) 667-3975
mprice@pricelegal.com

POR: _____/firmado/_____
       MAX R. PRICE, ESQ.
       Colegio de Abogados de la Florida
       No. #651494

9