UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION

| | | |
|---|---|---|
| RICARDO DEVENGOECHEA, | ) | Case No.: 12-CV-23743-PCH/Otazo-Reyes |
| Plaintiff, | ) | |
| vs. | ) | |
| BOLIVARIAN REPUBLIC OF VENEZUELA, a foreign state, | ) | |
| Defendant. | ) | |

**AMENDED COMPLAINT AS A MATTER OF COURSE
FOR DECLARATORY JUDGMENT AND DAMAGES
PURSUANT TO THE FOREIGN SOVEREIGN IMMUNITIES ACT
(28 USC 1330 & 1602 et seq.)**

Plaintiff, by his attorneys, amending his complaint as a matter of course pursuant to Fed.R.Civ.P. 15(a)(1)(B), and complaining of defendant, alleges that:

**SUMMARY AND OVERVIEW**

1. This is an action under the Foreign Sovereign Immunities Act, 28 USC 1330 & 1602 et seq., in which plaintiff seeks damages for defendant Venezuela's failure to pay for his collection of antiquities, artifacts, historical documents, and a DNA sample (hair locket) of General Simon Bolivar ("Devengoechea Collection"). Plaintiff delivered these items to defendant Venezuela as part of the parties' commercial dealings in both Florida and Venezuela. Plaintiff acquired these items through a series of family inheritances originating in the nation of Columbia 200 years ago when plaintiff's ancestors had a personal and commercial relationship with General Bolivar. The items are worth millions of dollars because of their association with Simon Bolivar.

2. Simon Bolivar (1783-1830) was the greatest military and political leader in the history of South America. He played an immense role in the liberation and independence of five South

American countries. He led Colombia, Venezuela, Panama, Ecuador, and Peru to revolutionary victories over the Spanish Monarchy and was at various times the President of each country. General Bolivar is widely known as the George Washington of South America. During the height of his political and military prowess, Bolivar traveled across the world and lived for a time in Napoleonic France.

3. Plaintiff Ricardo Devengoechea's ancestors were a founding family of the nation of Colombia, maintained a close relationship with General Bolivar, and lawfully came to possess important artifacts concerning him. General Bolivar gifted these items to plaintiff's great, great, grandfather, Joaquin de Mier. Plaintiff's family, now living in the United States, continued in possession of these valuable historical items and handed them down from generation to generation.

4. Plaintiff, a citizen of the United States, maintained these items at his home in Orlando, Florida. Defendant Venezuela initiated commercial dealings with plaintiff through telephonic and written communications addressed to plaintiff in Florida and, in furtherance of these commercial activities, met with plaintiff in Florida and transported plaintiff by private jet from Florida to Venezuela with his collection. In Venezuela, plaintiff participated in defendant's examination of the items and was supposed to conclude the transaction. At defendant's request, the items were left in Venezuela but were never paid for nor returned to plaintiff despite his demands for payment or their return.

5. Plaintiff now seeks payment for the collection which defendant Venezuela has in its possession as a result of the parties' commercial dealings in both Florida and Venezuela.

## JURISDICTIONAL ALLEGATIONS

6. This Court has jurisdiction over the subject matter of this action and personal jurisdiction over defendant VENEZUELA under the Foreign Sovereign Immunities Act, 28 U.S.C. 1330(a) & 1602 et seq. Plaintiff seeks payment for his collection of personal artifacts and antiquities delivered to defendant VENEZUELA as a result of the parties' commercial dealings in both Florida and Venezuela. These dealings are based upon defendant VENEZUELA's commercial activities carried on within the United States and/or upon an act performed in the United States in connection with commercial activities carried on by defendant VENEZUELA elsewhere, and/or commercial activities carried on elsewhere with a direct impact in the United States, pursuant to 28 USC 1605(a)(2).

## PARTIES

7. At all material times, plaintiff DEVENGOECHEA was and is a citizen of the United States and State of Florida and was not a citizen or national of the nation of VENEZUELA. DEVENGOECHEA is *sui juris*.

8. At all material times, VENEZUELA was and is a foreign state as defined in 28 U.S.C. § 1603(a).

## BACKGROUND FACTS AND ALLEGATIONS

9. Plaintiff incorporates the allegations of paragraphs 1-8 of this Amended Complaint.

10. Plaintiff's family has roots in what is now the country of Columbia where plaintiff's great great grandfather Joaquin de Mier was an acquaintance and friend of General Simon Bolivar. General Bolivar gifted to plaintiff's great great grandfather numerous artifacts and now-valuable items including: historic documents which include correspondence and writings of General Bolivar, ornamental epaulets of General Napoleon Bonaparte of France (where General

Bolivar had resided for a time), General Bolivar's one-of-a-kind Liberation Medal of Peru, and General Bolivar's DNA sample (hair locket) (the "Devengoechea Collection").  Copies of some items in this collection, made while in plaintiff's possession, are attached as exhibit 1.

11.   These items are extremely valuable, worth millions of dollars, by reason of General Bolivar's fame and renown in the history of South America including his leadership in obtaining independence from Spain for the countries of Venezuela,, Columbia, Panama, Peru and Equador.

12.   General Bolivar is viewed as the George Washington of South America.  Many countries in South America, including Venezuela, have museums dedicated to him and to his heroic struggle to gain independence from Spain.

13.   The Devengoechea Collection remained in plaintiff's family which eventually resettled to the United States.  After passing from generation-to-generation, the Devengoechea Collection eventually came into the possession and ownership of plaintiff.  Plaintiff is a United States citizen and maintains his permanent residence in Orlando, Florida.

14.   In or about 2007, plaintiff received a telephonic inquiry about the Devengoechea Collection from an official in the Venezuelan government.  This inquiry included an expression of interest in viewing and purchasing the collection as part of an investigation in Venezuela concerning Simon Bolivar.

15.   Shortly thereafter, on October 15, 2007, defendant VENEZUELA sent a letter, addressed to plaintiff in the United States, related to its interest in the Devengoechea Collection. The letter referenced plaintiff's family relationship with Simon Bolivar and was on the letterhead of "Fundacion Museos Nacionales" in the "Ministerio del Poder Popular" of the "Gobierno Bolivariano de Venezuela", which translates to the Foundation of National Museums in the Ministry of Popular Power of the Government of the Bolivarian Republic of Venezuela

("Venezuelan Ministry of Culture"). A copy of the October 15, 2007 letter in its original Spanish is attached as exhibit 2.

    16. Translated to English, the October 15, 2007 letter reads as follows:

> "Letterhead of "Fundacion Museos Nacionales", "Ministerio del Poder Popular" of the "Gobierno Bolivariano de Venezuela" [Foundation of National Museums in the Ministry of Popular Power of the Government of the Bolivarian Republic of Venezuela]
>
> "Caracas, October 15, 2007
>
> "Mr.
> Ricardo Devengoechea de Mier
> Present –
>
> "Dear Sir:
>
> "I am pleased to welcome you on this occasion to express the following. The Ministry of Popular Power for Culture through its affiliated entities are pushing forward a series projects and actions to recreate and document facts, figures and historical events in order to ensure our cultural identity and disclose our human values.
>
> "In this sense and knowledge of your qualifications and experience as a filmmaker and film producer, we would like to extend an invitation [to you] to come to our country to join us with the purpose of [making] a documentary on the life of Don Joaquin de Mier, a citizen of Spanish origin and character [and of] interest for our country as it was in a building he owned, the fifth San Pedro Alejandrino, where our Liberator Simon Bolivar died. The recreation of the life of Simon Bolivar contemplates various chapters and issues where your active and sensible involvement would enrich and expand our goals.
>
> "With confidence in your positive and enthusiastic response, I say goodbye and wait for your positive and prompt response.
>
> "[signature]\
> Zueiva Vivas
> President of the Bolivarian Republic of Venezuela's Foundation of National Museums".

    17. Subsequent to sending this letter, Venezuelan officials arranged to meet with plaintiff in Florida, to discuss the transaction with him, and to fly him from Florida to Venezuela

5

with his Devengoechea Collection. Defendant dispatched a private plane to Florida precisely for this purpose. Pictures of the Venezuelan plane – with plaintiff in Florida and in flight -- are attached as exhibit 3.

18. In this private jet were several Venezuelan officials who met with plaintiff in Florida concerning the Devengoechea Collection and traveled with him from Florida to Venezuela. One was Ms. Delcy Rodriguez, Coordinator General of the Office of the Vice President. Ms. Rodriguez engaged in extensive commercial negotiations with plaintiff concerning the Devengoechea Collection in Florida, in flight to Venezuela, and in Venezuela itself.

19. In Venezuela, the parties continued their commercial activities and negotiations while plaintiff was a guest of the Venezuelan government and while its experts examined the items in the Devengoechea Collection.

20. At one point, plaintiff mentioned that he might have further artifacts at his home in Orlando, Florida with further pictures. Defendant, at its own expense and for its own benefit, sent plaintiff back to Florida to search for more materials as part of the parties' ongoing commercial activities. Plaintiff spent approximately 2 days back in Florida, on behalf of defendant and at defendant's request, searching for more materials. This interim round-trip travel, from Caracas to Orlando and back, occurred on American Airlines, fully paid by defendant. Copies of airline tickets for part of this interim round-trip travel are at exhibit 4.

21. After returning to Venezuela, plaintiff remained in Venezuela until Nov. 6, 2007 when he permanently returned to Florida by private jet, again provided by defendant.

22. At the request of defendant VENEZUELA, plaintiff entrusted the Devengoechea Collection to it and left the collection in Venezuela upon plaintiff's return to the United States, hoping to conclude negotiations for defendant's purchase of the collection, subject to its agreed

return to plaintiff upon his request absent a consummated purchase agreement and completion of defendant's examination.

23. After completion of defendant's investigation, and lacking payment or a written purchase agreement, plaintiff requested return of the Devengoechea Collection which defendant declined to do. The collection remains in defendant's possession.

## COUNT I – DECLARATORY RELIEF
### (28 USC 2201)

24. Plaintiff incorporates the allegations of paragraphs 1-23 of this Amended Complaint.

25. A actual controversy exists between the parties concerning plaintiff's entitlement to payment for the Devengoechea Collection and, absent payment, to its return.

26. Pursuant to 28 USC 2201, this Court should declare plaintiff's entitlement to payment for the Devengoechea Collection at its fair market value, believed to be several millions of dollars, and, if not, to its return to plaintiff.

## COUNT II – DAMAGES BASED UPON DEFENDANT'S COMMERCIAL ACTIVITIES CARRIED ON WITHIN THE UNITED STATES
### 28 USC 1605(a)(2) (clause 1)

27. Plaintiff incorporates the allegations of paragraphs 1-26 of this Amended Complaint.

28. Plaintiff suffered damages, amounting to the value of the Devengoechea Collection, based upon defendant VENEZUELA's numerous commercial activities within the United States including without limitation defendant's initiation of negotiations in the United States for defendant's purchase of the Devengoechea Collection, defendant's written letter and telephone calls to plaintiff in the United States intended to obtain purchase of the Devengoechea Collection, defendant's actual negotiations with plaintiff in the United States for defendant's purchase of the Devengoechea Collection, defendant's sending a private jet to the United States

to transport plaintiff and the Devengoechea Collection to Venezuela where defendant took possession of the Devengoechea Collection, defendant's request that plaintiff return to the United States on an interim basis on behalf of defendant to search for still more items in the Devengoechea Collection which plaintiff did at defendant's request, and defendant's payment for plaintiff's interim return trip to the United States on behalf of defendant to search for still more items in the Devengoechea Collection which plaintiff did.

29. Based on defendant's commercial activities within the United States, defendant did not pay for the Devengoechea Collection which proximately damaged plaintiff.

30. This Court should award to plaintiff damages for the full value of the Devengoechea Collection, together with the costs and attorneys fees incurred in the prosecution of this action.

**COUNT III – DAMAGES BASED UPON DEFENDANT'S ACTIONS PERFORMED WITHIN THE UNITED STATES IN CONNECTION WITH DEFENDANT'S COMMERCIAL ACTIVITIES ELSEWHERE
28 USC 1605(a)(2) (clause 2)**

31. Plaintiff incorporates the allegations of paragraphs 1-26 of this Amended Complaint.

32. Plaintiff suffered damages, amounting to the value of the Devengoechea Collection, based upon defendant VENEZUELA's actions within the United States in connection with defendant's commercial activities elsewhere. Defendant's commercial activities outside the United States included defendant's obtaining, cataloging, collecting and displaying all or parts of the Devengoechea Collection in museums in Venezuela, defendant's conducting negotiations for purchase of the Devengoechea Collection in Venezuela, defendant's initiation of communications to plaintiff to obtain the Devengoechea Collection in Venezuela, and defendant's dispatch of transportation to the United States to bring plaintiff and the Devengoechea Collection to Venezuela.

33. In connection with these commercial activities outside the United States, defendant performed the following related actions within the United States: Defendant initiated negotiations in the United States for defendant's purchase of the Devengoechea Collection, wrote a letter to plaintiff in the United States and made telephone calls to plaintiff in the United States intended to obtain purchase of the Devengoechea Collection, negotiated with plaintiff in the United States for defendant's purchase of the Devengoechea Collection, sent a private jet to the United States to transport plaintiff and the Devengoechea Collection to Venezuela where defendant took possession of the Devengoechea Collection, requested that plaintiff return to the United States from Venezuela on an interim basis on behalf of defendant to search for still more items in the Devengoechea Collection which plaintiff did, and paid for plaintiff's interim return trip to the United States on behalf of defendant to search for these additional items in the Devengoechea Collection.

34. Based on defendant's actions within the United States in connection with defendant's commercial activities outside the United States, defendant did not pay for the Devengoechea Collection which proximately damaged plaintiff.

35. This Court should award to plaintiff damages for the full value of the Devengoechea Collection, together with the costs and attorneys fees incurred in the prosecution of this action.

### COUNT IV – DAMAGES BASED UPON DEFENDANT'S ACTIONS AND COMMERCIAL ACTIVITIES OUTSIDE THE UNITED STATES WHICH CAUSED A DIRECT EFFECT WITHIN THE UNITED STATES
### 28 USC 1605(a)(2) (clause 3)

36. Plaintiff incorporates the allegations of paragraphs 1-26 of this Amended Complaint.

37. Plaintiff suffered damages, amounting to the value of the Devengoechea Collection, based upon defendant VENEZUELA's actions and commercial activities outside the United

States which caused a direct effect within the United States. Outside the United States, defendant obtained, cataloged, collected and displayed all or parts of the Devengoechea Collection in museums in Venezuela, originated communications to the United States to obtain the Devengoechea Collection, arranged for transport to the United States to obtain the Devengoechea Collection for Venezuela, conducted negotiations for purchase of the Devengoechea Collection in Venezuela, and persuaded (misled) plaintiff to entrust the Devengoechea Collection to defendant upon plaintiff's return to the United States.

38. These commercial activities and actions outside the United States had a direct impact within the United States by depriving plaintiff of the Devengoechea Collection which plaintiff previously had maintained at his home within the United States for many years.

39. Based upon defendant's actions and commercial activities outside the United States which had a direct impact within the United States, defendant did not pay for the Devengoechea Collection which proximately damaged plaintiff.

40. This Court should award to plaintiff damages for the full value of the Devengoechea Collection, together with the costs and attorneys fees incurred in the prosecution of this action.

**CERTIFICATE OF SERVICE**

This Amended Complaint and the attached exhibits 1-4 are being served on defendant's counsel this 16th day of July 2015 through this Court's ECF system.

Dated this 16th day of July 2015

LAW OFFICES OF MAX R. PRICE, P.A.
Attorneys for Plaintiff
6701 Sunset Drive, Suite 104
Miami, Florida 33143
Tel.: (305) 662-2272
Fax: (305) 667-3975
mprice@pricelegal.com
by:     /s/ Max R. Price
          Max R. Price.
          FL. BAR #651494